## JONES *et al. v.* NATHROP.

(*Supreme Court of Colorado, December Term, 1883—Error to the District Court of Saguache County.*)

1. IMPLIED CONTRACT—WRITTEN CONTRACT AS A DEFENSE. In an action brought on implied liability, a defense setting up a written agreement, which presents no valid defense to the cause of action, does not make the action one upon an express contract, and so defeat a recovery upon the implied obligation.

2. DAMAGES—REMOTE. Damages for a breach of contract can only be recovered when they are averred and proved as the natural, direct and certain result of the breach—excluding probable profits and speculative damages; what might have been realized as profits on making and selling shingles, if a shingle mill had been delivered, is too remote.

STONE, J. The plaintiffs in error were sued in the Court below for the sum of $2,000, claimed for the use of a steam saw mill from Dec., 1880, to June 1881. In their answer they admit the use for the time charged, but deny indebtedness therefor. They then allege that there was a written agreement for the sale to them of the saw mill and also a shingle mill, with stipulated terms of payment. They also charge false and fraudulent representations respecting the machinery, and further aver that no shingle mill was ever delivered to them, and that Nathrop at the time of the sale did not have a shingle mill.

By way of cross-complaint they allege that Nathrop wrongfully took away the mill from them, and they claim damages for loss of profits which they would have made on lumber, in the sum of $5,000; for the wrongful removal of the saw mill, $1,000; for loss of shingle timber, cut but not used, $1,000; and for the loss of profits on shingles, which they would have made, if they had been furnished the shingle mill, as agreed, the further sum of $1,500; total, $8,500.

The claims of $5,000 and $1,500 for loss of profits on lumber and shingles, were demurred to; the demurrer was confessed as to the lumber claim, and overruled as to the claim for profits on shingles.

There was a replication admitting the written agreement of sale, but alleging that it contained a condition that the machinery was not to be moved out of the county of Chaffee

without the consent of Nathrop, and avers that the plaintiff in error did move the saw mill out of the said county, and that thereupon said Nathrop took possession of the same, as by the terms of said agreement he had full power and lawful authority to do. The replication then denies the alleged false and fraudulent representations; denies the wrongful retaking of the mill; denies any damages by reason of such retaking, and denies any damage for loss of shingle timber.

The cause was tried to a jury, who found a verdict for defendant in error, Nathrop, of $180, and judgment was rendered accordingly.

The grounds of reversal are—

*First*—That suit was brought on an implied contract, and the defense pleaded a written contract; hence, there was no good cause of action, since there cannot be both an implied and an express contract for the same cause of action at the same time.

*Second*—That the cross claims of $1,500 for shingle profits, and $1,000 for shingle timber, were uncontroverted, and hence the plaintiff in error was entitled to a judgment, notwithstanding the verdict.

The suit was brought upon an implied liability and promise to pay for the use of the saw mill. The right to recover did not rest on the written agreement for sale of the mill. The latter, while set up as a defense to the action, presented no valid defense; on the contrary, as set out in the pleadings, it was evidence merely of an agreement to sell the machinery upon certain terms therein specified, without any provision respecting the use in case the sale should not be completed. The sale was not to be complete until the last payment was made, upon which there was to be a bill of sale executed and delivered. This agreement, moreover, provided that the mill should not be taken out of the county of Chaffee, and in case of a violation of this condition, Nathrop should have the right to retake possession of the mill as his own property. This condition having been violated, as admitted by the pleadings, Nathrop having retaken the property, sued for the use, since the plaintiffs in error, although admitting the use for the time claimed against them, had paid nothing on account of either the sale or the use of the mill.

As to the second ground of reversal, that the items of $1,500 damages claimed for loss of profit on shingles, and $1,000 for value of shingle timber, were uncontroverted by the pleadings, and that, therefore, plaintiffs in error were entitled to a judgment for $2,500, *non obstante veredicto*, we think the point not sustained, since the record shows that these items do not "stand uncontroverted" as argued. The replication expressly denies the item for loss of shingle timber. As to the item for loss of profit on shingles, the demurrer to this item, as pleaded, should have been sustained. The averment was in effect that if plaintiff below had delivered to defendants a shingle mill, as he agreed to, said defendants would have made a large quantity of shingles, which they might have marketed at a profit, and that, therefore, as they aver, they have "sustained a loss of $1,500 as profit on the shingles which they would have made if plaintiff had furnished said shingle mill." These damages, as alleged, are too remote and merely speculative. Damages for breach of a contract can only be recovered when they are averred and proved as the natural, direct and certain result of the breach, excluding probable profits and prospective or speculative damages.

To determine the application of the rule is often a perplexing question, but the rule itself is too well settled to require a citation of the numerous and familiar authorities in its support. Sedgw. Meas. Dam., 72, 76 and note.

One of the numerous illustrations of the application of the doctrine is that cited by Mr. Sedgwick, in the note, *supra.*

When one had agreed to furnish a steam engine by a certain day to drive a planing and sawing mill, and through his default the mill was at a stand-still for a time for want of the engine after the stipulated day, it was held by the Supreme Court of New York, that a fair price for the use of the engine and machinery during the time lost should be allowed, but the claim for loss of net profits calculated from the amount of lumber the mill might have cut and planed, allowing usual prices for the work over running expenses and wear and tear, should be rejected as too uncertain. See the leading American case of *Griffin* v. *Colver,* 16 N. Y., 489, for a full discussion of the subject, and where the rule is concisely stated that "profits which

would have been realized but for the defendant's default, are recoverable; those which are speculative or contingent, are not."

In the case before us there is no such averment as shows the alleged damages to be the natural, certain and proximate result of the conduct of the party sought to be charged. Nor is there any averment that plaintiffs in error ever demanded the shingle mill after the alleged agreement to deliver it, and hence, the admitted acceptance and use of the saw mill alone may properly give a presumption that there was an acceptance by plaintiffs in error of the part performance of the agreement, and a waiver of the non-delivery of the shingle mill.

At all events, the case having been submitted to a jury upon the issues made by the pleadings, and upon evidence which is not brought up here by the record, we cannot say that the jury, in rendering a verdict for defendant in error of $180, instead of the $2,000 sued for, did not allow such proper amount of the counter claim of plaintiffs in error as the evidence warranted, and the judgment will not be disturbed.

*Judgment affirmed.*

*W. W. Jones* and *M. W. Cook*, for plaintiff in error.
*Weston & Rowell*, for defendant in error.