Barker, J.
—On a former trial of this action a non-suit was granted, which, on a motion made in this court, was-set aside and a new trial ordered, upon the ground that a case was made tending to prove a complete and valid contract and a non-performance thereof on the part of the defendant. Upon the trial now under review, the evidence-produced as to the making of a contract between .the parties, and the terms of the same, was substantially the same as that produced upon the previous trial. We then held, as stated in our opinion (reported in 2 N. Y. St. Rep., 218), that the evidence tended to prove that the parties considered and agreed upon everything essential to make a complete and binding contract, although a jury might find that their conversation was only preliminary, with a view of concluding an agreement at some future time; that upon the whole case, in the language of the opinion, “it became *639 & ojuestlon of fact for the jury to determine whether or not there was an assent of the minds of the parties so as to complete a valid contract, or whether that which passed between them was a loóse conversation not understood or intended as a contract.”
We have read the evidence as reproduced on the last trial, and reconsidered the argument of the counsel on the same question, and see no reason for changing our opinion.
The defendant makes an argument that the rule of damages adopted on the trial was erroneous. The jury were instructed that if they should find that the parties made and concluded an agreement, then the plaintiff was entitled to recover as a matter of law, at least nominal damages, as a breach of the contract; and this proposition was not disputed by the defendant. The evidence tended to prove that the defendant named a day on which he would deliver the lecture, and that the plaintiff assented to the appointment, and so notified the defendant, and that immediately thereafter the plaintiff incurred expense in preparing for the occasion by leasing a hall and advertising the lecture, etc.
The court charged the jury, as to the right of the plaintiff to damages for such expenses, as follows: “The plaintiff is entitled to recover his actual loss, his actual expenses, such expenses of time and money as he had put himself to, as he had made in good faith and were to be reasonably made in view of the execution of the contract which he had entered into, and it is for you to say what sum he did reasonably expend in money, time and labor in and about his preparations for the delivery of this lecture.” To this part ot the charge there was no exception. At the conclusion of the general charge, the lefendant’s counsel asked the court to instruct the jury: “That there is no evidence in this case upon which the jury can find anything but the actual damages proven.” This the court ref usd and the defendant excepted.
We are made to understand, from a perusal of the whole charge and the appellant’s argument on this appeal, that the purpose of making this request to charge, was to secure from the court instructions to the jury, that as a matter of law, the damages claimed by the plaintiff arising from the loss of the prospective profits, were too remote and uncertain, and cannot be legally allowed. Previous to making this request to charge, the court had expressly instructed the jury, that the plaintiff was not entitled to recover any- ' thing by way of damages, except those which they could see by the evidence he had sustained, and all uncertain and speculative damages, that were matters of guess and conjecture, should be rejected; and the court then gave the *640 further instructions: “But all such damages as you can clearly and fairly see the plaintiff has sustained, by the loss of such profits, as you clearly and fairly see he would probably have made, you may allow.” To the last part of these instructions the defendant took an exception.
These rulings present the only question, as to the rule of damages applicable to the case, which we have to consider on this appeal. The plaintiff by the terms of the contract, purchased from the defendant the profits to be realized by a delivery of the lecture on the terms stipulated by the agreement between the parties. The plaintiff had no other object or purpose in view on his part, than to secure to himself the profits which he might realize by a performance of the contract by the defendant. This the defendant must have understood when the contract was made. It was the only compensation which the plaintiff could have contemplated for the expense and trouble incident to the carrying out of the contract on his part.
The most direct and legitimate consequence which can follow on a breach of a contract of this character is the loss of the profits. Unless that loss can be made up to the. injured party, it is idle to say that any obligation was imposed upon the defendant by this contract.
The consideration which the defendant was to receive for the performance of the agreement on his part, was the sum of $250, which the plaintiff agreed to pay, and to which the plaintiff would have been entitled if he had visited Auburn at the time named by him, and offered to keep his promise. The law does not deny to the plaintiff the .right to recover from the defendant as damages, the prospective profits which the evidence established he had lost by reason of defendant’s breach of the contract. The rules as stated relative- to the measure of damages have been illustrated and applied in many cases analogous to the one at bar.
In Bagley v. Smith (10 N. Y., 489), the action was for damages arising from an unauthorized dissolution by the defendant of a copartnership, at a time and in a manner contrary to the terms of the copartnership agreement. The plaintiff was allowed, to recover as damages the profits be would have realized if the business had been continued. The court, in its opinion sustaining a verdict in the plaintiff’s favor, said: “Theloss of profits is one of the common grounds, and the amount of profits lost one of the common measures of the damages to be given upon a breach of contract.”
In that case, the sum which the party would have made, in other words, his prospective profits, from a performance of the contract by the defendant, was held to be a true measure of damages.
*641 The case of Gale v. Lecky (2 Stark., 96), is an English case, strikingly like the one before us, in the nature of the agreement involved and the difficulty of proving that loss of profits had been sustained by the plaintiff. In that case the defendant agreed, as author, to furnish a manuscript work to the plaintiffs, to be published by them at their expense and the profits to be equally divided.
The defendant failed to fulfill, and an action was brought to recover damages arising from the breach. The plaintiff gave evidence tending to show that he would probably have made a profit on the publication, and it was submitted to the jury to fix the amount of such profits and to assess the amount of the plaintiff’s damages on that basis, and they rendered a verdict for £50.
The rule is firmly established that a party to a contract may recover as damages the loss of the benefits and gains he would have realized from its performance. This measure <of damages has been applied to a great variety of agreements. Taylor v. Bradley, 39 N. Y., 129; Masterson v. Mayor, etc., 7 Hill, 61; Bagley v. Smith, 10 N. Y., 489; Wikman v. Wheeler & Wilson Mfg. Co., 101 id., 205.
In this case, the evidence was such that the amount of profits lost by the plaintiff was doubtful and uncertain, but the same tended to prove that if the defendant had performed the agreement on his part, the plaintiff would have realized from the sale of admission tickets a sum equal to the amount of the verdict, over and above the sum which he agreed to pay to the defendant and the expenses of preparing for superintending the delivery of the lecture.
The damages assessed by the jury, as we must hold, in view of the instruction which they received from the court, were in their opinion the certain and direct results of the breach of the contract, and to such damages the plaintiff is entitled to as matter of law.
The appellant sought to show tho other parts of the charge were erroneous, but no exceptions were taken to such matters, so as to bring up the question for review on this appeal. During the trial, the appellant made objections to the receipt of certain items of evidence which it is claimed were improperly received. The plaintiff sought to prove that Mr. Ingersoll did name the 20th of January, 1878, as the day he would visit Auburn and deliver the lecture in pursuance of his agreement. To maintain this fact, the plaintiff was permitted to testify in his own behalf that he received at Auburn, on or about the 5th of the same month, a telegram message purporting to be sent by the defendant, naming the 20th of January as the time for the *642 delivery of the lecture, and that he immediately replied by telegram, stating that the time mentioned was satisfactory to him. It was admitted on the trial that the original of these messages had been destroyed by the telegraph company, and the plaintiff testified that the copy of the one which he received was lost.
The objections interposed to this evidence should be carefully scrutinized, and it should plainly appear that some error was committed in the rulings in receiving the same before it is held, on this appeal, that the exceptions were well taken. The question asked the plaintiff on that subject was in this form: “Did you have a communication, or did you receive a telegram ■ purporting to come from Mr. Ingersoll some time after "the conversation in Syracuse?” The defendant objected to this question as incompetent and improper, which was overruled and an objection taken, and the witness then answered that he did. Both the question and the answer were entirely competent, as the evidence simply proved that the parties to the contract had been in correspondence relative to the execution of the contract, and neither the question or the answer revealed the contents of the telegram.
The next question to which an objection was made related to the contents of a message sent by the plaintiff to the defendant, and was as follows: “What was the telegram you sent in answer to the one you received?” The defendant’s objections were:
First. That the plaintiff had made no proof that the-telegram sent was ever delivered to the defendant, or that the plaintiff had served notice on the defendant to produce it. It was competent to prove the contents of the message by paroi, as it was admitted that the original message deposited, with the telegraph company had been destroyed. When it is proved that a message has been delivered to a. telegraph company for the purpose of transmission, properly addressed to the correspondent at his place of residence, a presumption of fact arises—that the telegram reached its destination—sufficient at least to put the other party to his denial, and raises an issue to be determined. Oregon Steamship Co. v. Otis, 100 N. Y., 446; Commonwealth v. Jeffreys, 7 Allen, 548; State v. Hopkins, 50 Vt., 316.
In no other form was the question presented to the trial court for it to rule upon, that the telegram purporting to- , be sent by the defendant to the plaintiff was not his own act. Some other evidence was given, entirely competent in its character, tending to show that the message received by the plaintiff was sent by the defendant. See folio 78.
The evidence received relative to the plaintiff’s reply to the defendant’s message, and the contents of the same, was- *643 clearly competent and properly received. We, therefore, fail to find any error in receiving the evidence as to the contents of the telegrams.
The plaintiff also produced and read in evidence a letter dated December the 26th, 1884, in the hand-writing of one Baker, and signed with the defendant’s name, which contained, in substance, an admission that he did, in January, 1879, fix a time for the delivery of the lecture, but was prevented from attending at the time mentioned. This letter was received and read in evidence over the defendant’s objection and exception. Unless it was made to appear that Baker, in whose hand-writing the letter was written, including the signature, was authorized by the defendant to prepare and send the same, it should have been rejected.
There was proof tending to show that at the time the letter was written Baker was in Mr. Ingersoll’s employ, acting as his agent in the lecture business and had charge of his appointments. But it was not shown that he was the defendant’s agent or in his employment for any purpose in the year 1879, the season he agreed to lecture for the plaintiff. The receipt of the letter as evidence against the defendant cannot be sustained upon the ground that Baker, was his agent, superintending and managing the lecture business, for as such he had no power to make an admission as to a past transaction. But we think there was evidence tending to prove, in connection with the other circumstances revealed on the trial, that in preparing and sending the letter Baker acted as the amanuensis of Mr. IngersoH, and that the letter may be treated as a personal communication from the defendant himself.
The defendant moved for a non-suit on the ground that it was made a condition precedent by the terms of the contract that the plaintiff should pay to the defendant the consideration money agreed upon before the lecture was delivered. It may be conceded that it was made a condition precedent by the terms of the contract that the defendant should be paid the consideration money before the lecture was delivered, but in view of the fact that the contract was to be performed ‘at Auburn, and necessarily required the personal attendance of the defendant, we think it would be an unreasonable construction to put upon the contract that the plaintiff was to make payment at any time previous to the attendance of the defendant at Auburn for the purpose of delivering the lecture. The contract mentioned no time or place for the payment of the money, nor as to the particular day on which the lecture was to be delivered during the lecture season of 1879, but the date was to be named thereafter by the defendant. Until he had so named a day and visited Auburn to carry out his engage *644 ment, we think the plaintiff was not called upon to make a tender of the money by any term of the contract, expressed or implied.
The jury were justified from the evidence in reaching the conclusion that the defendant entirely repudiated his contract and did not intend to perform it. Where one party to a contract declares to the other party to it that he will not make the performance on the future date fixed therefor, the other party is excused from performance on his part, or offer to perform, and may maintain his action for a breach of the contract when the day for the performance has passed. Shaw v. Republic Life Ins. Co., 69 N. Y., 286.
This rule is applicable to this case, for if the defendant did not name a day during the lecture season for the performance of his contract, then he was guilty of a breach of his promise. If he did name a day and did not go to Auburn to perform it at that time, then he also violated his, contract and the plaintiff may maintain this action for damages.
Many other exceptions were taken upon the trial, but as the appellant’s counsel has waived an examination of the same on this appeal, we have not given them attention.
Judgment affirmed.
All concur.