(21 Misc. Rep. 410.)

### GUCCIONE v. SCOTT.

(Supreme Court, Trial Term, New York County. October 18, 1897.)

1. CONTRACTS—AMBIGUITIES—RULE OF CONSTRUCTION.
    Where promisors used language that might be understood in more than one sense, it is to be interpreted in the sense in which they had reason to suppose it was understood by the promisee.

2. PARTNERSHIP—WITHDRAWALS—LIABILITY OF REMAINING MEMBERS.
    When plaintiff became a partner in a firm composed of defendant and H., the firm agreed to permit his withdrawal on five months' notice, and to return to him the amount he contributed. Subsequently, according to an agreement, H. withdrew, after transferring his interest to the remaining partners. *Held*, that defendant was bound to fulfill the contract with plaintiff, in view of Code Civ. Proc. § 1942, providing that after dissolution of a firm a firm creditor may release one member, and still hold the others.

3. ACTIONS AT LAW BETWEEN PARTNERS—WHEN PROPER.
    One partner may sue the other partners at law on an agreement to restore to him the amount by him contributed, as such action does not involve a consideration of the partnership accounts.

4. CONTRACTS—PARTIAL PERFORMANCE—ACCEPTANCE.
    Plaintiff agreed to contribute a certain sum to a firm, which agreed to repay the same when he desired to withdraw. To the knowledge of the firm, plaintiff was unable to raise all he agreed to contribute, but the firm accepted the amount he tendered. *Held*, that the firm was liable on their agreement to the extent of the money received.

Action by Alfred Guccione against Alexander J. Scott to recover back contribution of capital under special provision of co-partnership articles. Judgment for plaintiff.

C. L. Davis, for plaintiff.
Dailey, Bell & Crane, for defendant.

McADAM, J. On May 12, 1894, the plaintiff, defendant, and one Hazen entered into articles of copartnership for the carrying on the business of manufacturing and selling vermouth and other cordials. Scott and Hazen contributed the stock, fixtures, and good will of the business theretofore carried on by them, and plaintiff agreed to contribute $2,500, of which $2,000 was to be paid at once, and $500 when required. The agreement contained a special provision that plaintiff might withdraw from the firm by giving his partners five months' written notice of his intention so to do, at the end of which time he was to receive a return "from the partnership" of the capital contributed. This means a return from Scott and Hazen, to whom the money was given. The purpose is manifest throughout that five months after the plaintiff elected to retire from the firm he was to be restored to the condition he occupied before he entered it, and this intention of the parties, gathered from their writings, acts, and conduct,

must, as between them, be regarded in construing the contract. 5 Wait, Act. & Def. 114, 115; 2 Pars. Cont. (6th Ed.) 494. Even if the language of the promisors might be understood in more senses than one, it is to be interpreted in the sense in which they had reason to suppose it was understood by the promisee. Ransom v. Wheelwright, 17 Misc. Rep. 141, 39 N. Y. Supp. 342. Hazen became dissatisfied and filed a bill for the dissolution of the firm. Plaintiff placed the suit in charge of his attorney, and a settlement was effected, by which it was agreed that Hazen should leave the firm, and transfer his interest therein to the remaining partners. The agreement bears date July 21, 1894, and contains mutual covenants. The retirement of Hazen, the practical vermouth manufacturer of the concern, did not assist the business, which continued to decline until it became a total wreck. The legal effect of the dissolution agreement was to discharge Hazen from the covenant to refund the plaintiff's advances, but did not impair the latter's right of action against the defendant, who, by the same instrument, consented to such discharge. Code Civ. Proc. § 1942. The effect, therefore, of Hazen's retirement, was to leave the partnership agreement in other respects unaffected by the change, and thereafter binding upon the remaining partners; and, as a consequence, the obligation to restore the plaintiff's contribution of capital devolved upon the defendant alone. Clarke, Cont. (Hornbook Ed.) 612, 615. Indeed, the plaintiff testified that this understanding was distinctly had with the defendant, and that he signed the dissolution agreement in consideration of the defendant's express promise that he would individually perform the covenant to return his money. The defendant had the undoubted right to bind himself in this manner. Story, Partn. § 192. Though the complaint contains much extraneous matter that might well have been omitted, the action is founded on the special provision of the articles to return to the plaintiff his contribution of capital, and the obligation of the defendant to answer for its performance. The agreement to restore the plaintiff's money may have been an indiscreet one for the defendant to make, but it was evidently the inducing cause of the contract, not made to depend upon the success or failure of the enterprise, or on any condition other than the plaintiff's pleasure, signified by the service of a five-months notice, which was given on August 22, 1894, and suit was brought after the specified time had expired. While partners cannot sue one another at law for any of the business or undertakings of the partnership, they may so sue each other for a breach of any distinct covenant in the partnership agreement. Glover v. Tuck, 24 Wend. 153; Paine v. Thacher, 25 Wend. 450; Wills v. Simmonds, 8 Hun, 189; Madge v. Puig, 12 Hun, 15; Bagley v. Smith, 10 N. Y. 489. And see Mowatt v. Londesborough, 3 El. & Bl. 307; Id., 4 El. & Bl. 1. And where adequate relief may in such case be obtained, equity will not interfere. Duncan v. Lyon, 3 Johns. Ch. 360; Kinloch v. Hamlin, 2 Hill (S. C.) 19; Hunt v. Gookin, 6 Vt. 462. In short, whenever the cause of action is distinct from the partnership accounts, and does not involve their consideration, an action at law will lie. 1 Wait, Law & Prac. 552. Courts cannot make contracts for parties, but must en-

force those made by them, and as they made them. True, the plaintiff did not furnish the entire capital he agreed to contribute, but this furnishes no justification for keeping what he did pay in, for such is contrary to the spirit of the agreement. While the defendant and Hazen might have insisted upon strict and full performance by the plaintiff as a condition precedent, they had the right to, and did, waive such performance when they accepted what he tendered, with knowledge that he could not contribute all he agreed, for the substantial reason that he could not raise the money. The only effect, therefore, of failing to pay in all the capital he agreed to contribute was to make him a debtor to the firm to the extent of the amount unpaid (Story, Partn. § 203); but, in view of the special covenant to return what was paid in, and the plaintiff's election to enforce such return, this phase of the case, under the pleadings, is material now only as limiting the amount to be refunded. The defendant must be credited with $57.65, which the plaintiff received from the firm, and the latter is entitled to judgment for $1,542.35, with $246.93 interest, aggregating $1,789.28.